**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JENNIFER MOLES,                    )
          Plaintiff,               )
                                   )
     v.                            )          CAUSE NO.: 1:24-CV-425-GSL-JEM
                                   )
FRANK BISIGNANO, Commissioner      )
of the Social Security Administration,  )
          Defendant.               )

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Jennifer Moles on October 11, 2024, and Plaintiff's Brief in Support of the Request for Review [DE 13], filed on February 20, 2025. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 28, 2025, the Commissioner filed a response, and Plaintiff filed a reply on June 11, 2025.

On June 18, 2025, Judge Gretchen S. Lund entered an Order [DE 23] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and remanded.

**I.     Background**

On December 1, 2022, Plaintiff filed an application for benefits alleging that she became disabled as of March 25, 2021. Plaintiff's application was denied initially and upon consideration.

1

On January 31, 2024, Administrative Law Judge ("ALJ") Meredith Jacques held a telephonic hearing at which Plaintiff, without an attorney, and a vocational expert ("VE") testified. On March 20, 2024, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant meets the insured status requirements of the Social Security act through March 31, 2021.

2.      The claimant has not engaged in substantial gainful activity since March 25, 2021, the alleged onset date.

3.      The claimant has the following severe impairments: seizure disorder, major depressive disorder, general anxiety disorder, post traumatic stress disorder, and obesity.

4.      The claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; frequently balance as defined in the Characteristics of Occupations and the dot; can occasionally stoop, kneel, crouch, and crawl. She must avoid all exposure to hazards, such as unprotected heights and unguarded moving mechanical parts. Can understand, remember, and carry out simple instructions and tasks. Cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. Can deal with occasional changes in a routine work setting. Can have occasional interactions with supervisors and coworkers but contact with supervisors still included what is necessary for general instruction, task completion, or training, and no tandem tasks, and no interaction with the publics.

6.      The claimant is unable to perform any relevant past work.

7.      The claimant was a younger individual age 18-49 on alleged disability onset date.

8.      The claimant has at least a high school education.

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

2

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 25, 2021, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler*, 87 F.4th at 857 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

## III.     Analysis

Plaintiff argues that the ALJ made a number of reversible errors. The Commissioner argues that the opinion is supported by substantial evidence.

First, Plaintiff argues that the ALJ did not explain how the RFC incorporated Plaintiff's mental limitations. The ALJ found that Plaintiff has a moderate limitation in understanding,

remembering, or applying information and moderate limitations in interacting with others, as well as moderate limitations with regard to concentrating, persisting, or maintaining pace. "Again and again, [the Seventh Circuit Court of Appeals] ha[s] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) (collecting cases). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' [courts] will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.

In this case, the ALJ's hypothetical to the VE did not mention any specific difficulty concentrating, persisting in a task, or maintaining pace. It reflected the same limitations as is in the ultimate RFC, describing someone who "is able to understand, remember, and carry out simple instructions and tasks [but] cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas" and "[i]s able to deal with occasional changes in routine work setting, can [have] occasional interactions with coworkers and supervisors," but "no interaction with the public." AR 67. The ALJ found that the Plaintiff has moderate limitation in interacting with others, getting into arguments at times and with some difficulties getting along with others, including her boyfriend. Plaintiff argues that the limitation in the RFC refers only to the amount of time she can interact with others, not the quality of the interaction. *See Wartak v. Colvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar.

4

8, 2016) ("'Occasional contact' goes to the quantity of time spent with the individuals, whereas "superficial contact" goes to the quality of the interactions."). The VE also testified that someone with those limitations could not remain employed if they were off-task for more than fifteen percent of a workday or missed more than two days per month of work. AR 68.

Plaintiff also argues that the RFC did not thoroughly account for Plaintiff's mental limitations and attendant social restrictions. The ALJ noted two physician assessments of Plaintiff's mental abilities. The first she found unpersuasive as inconsistent with later-received evidence. The second was the report of a state agency doctor, Dr. Lovko. The ALJ also found her opinion to be not persuasive in part because it did not fully define the terms it used to describe Plaintiff's social limitations. She explained that the assessment's "limits are also not consistent with the record that shows even with mood stability issues and irritability, she made good progress with medication and therapy. Furthermore, although the detailed but not complex was supported by the explanation provided by Dr. Lovko, greater limits are consistent with the evidence received at the hearing level." AR 33. The Court is unable to determine whether the opinion is inconsistent with the record because Plaintiff's progress with medication meant she is less restricted than it expresses or whether additional evidence shows that she is more limited. The Court is unable to follow the logic of the ALJ's assessment of Dr. Lovko's opinion, and is left without knowing upon what, other than the ALJ's own judgment, she based her assessment of how Plaintiff's mental health struggles affect her ability to work. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). The ALJ must

"provide a 'logical bridge'" between the mental health evidence and her conclusions about her ability to work, but she has failed to do so in this case. *Tutwiler*, 87 F.4th at 857.

Similarly, Plaintiff argues that the ALJ erred in finding her activities of daily living to be inconsistent with disabling symptoms. Plaintiff points out that her daily activities are limited, and argues that although the ALJ stated that the RFC "is supported by . . . the claimant's activities of daily living," AR 34, the ALJ did not explain how Plaintiff's limited activities corresponded to an ability to work. Plaintiff points out that she needs significant help with activities of daily living. She needs assistance with taking care of her daughter, cannot remember to take medications consistently without reminders, requires help doing chores, and has difficulties caring for her own personal hygiene. The ALJ mentioned some of these difficulties earlier in the opinion, but did not explain how these limitations are consistent with the ability to maintain full-time employment. *Thompson v. Berryhill*, 722 F. App'x 573, 580 (7th Cir. 2018) (finding error where the ALJ used reports of activities of daily living to discredit physician opinion but "ignored the qualifications [the claimant] put on those statements") (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)); *see also Reinaas v. Saul,* 953 F.3d 461, 467 (7th Cir. 2020) ("We have previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job."); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting "critical differences between activities of daily living and activities in a full-time job," such as "that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work,

6

flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Although the ALJ noted Plaintiff's struggles with anxiety and that Plaintiff reported continued regular actions of self-harm, including hitting herself when she is feeling overwhelmed, the Court cannot determine how those limitations were incorporated into the RFC, if at all. Given Plaintiff's limitations in concentration, pace, understanding or applying information, and her additional limitations in interacting with others, it is not apparent to the Court that the hypothetical "specifically excluded those tasks that someone with the claimant's limitations would be unable to perform," *O'Connor-Spinner*, 627 F.3d at 619, and therefore is inadequate. *See also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (finding error where "the ALJ similarly focused her analysis on the doctors' bottom-line conclusion that DeCamp was not precluded from working without giving the vocational expert any basis to evaluate all DeCamp's impairments, including those in concentration, persistence, and pace"). The Court recommends that the ALJ be directed on remand to explain how the RFC takes into account the limitations in daily living experienced by Plaintiff, mindful of the differences between Plaintiff's ability to do what she must to survive and to continually perform at the level that would be required to succeed at a job, should consider all the medical evidence and opinions in the record, and provide a logical bridge from the evidence to the conclusion.

Plaintiff argues that medical evidence submitted to the appeals counsel was new and material evidence that would likely have led the ALJ to reach a different conclusion if she had considered it. The evidence is a medical source statement completed by Plaintiff's treating therapist addressing how Plaintiff's limitations affect her ability to work. Plaintiff argues that if the ALJ had reviewed the information, the opinion would have changed, since the statement

specifically addresses Plaintiff's inability to maintain concentration, persistence, and pace throughout the day, as well as her difficulties interacting with others. Because the Court is recommending remand for the determination of Plaintiff's RFC and whether there is work that she is able to do with those limitations, the Court need not determine whether this evidence was new and material, since it will be part of the record for the ALJ to consider on remand.

## IV.    Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Brief in Support of the Request for Review [DE 13] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 8th day of September, 2025.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record